```
                UNITED STATES BANKRUPTCY COURT
                 EASTERN DISTRICT OF KENTUCKY
                       LEXINGTON DIVISION
```

IN RE:

SAMARITAN ALLIANCE, LLC
d/b/a Samaritan Hospital, et al.

DEBTORS                                     CASE NO. 07-50735
                                            Chapter 11
                                            Jointly Administered

## MEMORANDUM OPINION

This matter is before the court to resolve a dispute between Cardinal Hill Rehabilitation Unit at Samaritan Hospital ("Cardinal Hill" or "CHRU")) and the University of Kentucky ("UK") concerning whether Cardinal Hill will continue to operate a 34-bed sub-acute Skilled Nursing Facility ("SNF") on the seventh floor of Samaritan Hospital ("the Hospital"), the facility formerly operated by the Debtor Samaritan Alliance, LLC.  UK purchased the Hospital in a Bankruptcy Code section 363 sale. The purchase is memorialized in the Sale Order and Agreed Order of Settlement by and among the Debtor, University of Kentucky, KMSF, Ventas Realty, Limited Partnership and the Official Committee of Unsecured Creditors ("the Sale Order," Doc. # 234 ) entered herein on June 6, 2007.

    1.   <u>Factual and procedural history</u>

On February 1, 2005, Samaritan and Ventas Realty LP ("Ventas") entered into an Acquisition Agreement and a Master Lease Agreement ("the 2005 Master Lease").  Under the terms of the Acquisition Agreement the Hospital and certain personal property were transferred to Ventas.  Ventas then leased the purchased property to Samaritan

1

under the terms of the Master Lease. On September 20, 2005, Samaritan entered into several integrated agreements with Cardinal Hill regarding Cardinal Hill's opening a sub-acute SNF at the Hospital. These agreements were a Skilled Nursing Facility Lease Agreement ("the SNF Lease"), a Purchased Services Agreement, and a Patient Transfer Agreement (collectively "the CHRU Agreements"). On April 12, 2006, the parties entered into a Letter of Agreement to add storage space and rent to the SNF Lease. The term of the SNF Lease was through the year 2015.

On April 12, 2007, clearly in contemplation of the bankruptcy to be filed, the Debtors, UK, and Ventas, the owner of the real property, entered into a Master Agreement. Simultaneously, Ventas and UK entered into a new master lease of the Hospital, and Ventas terminated the 2005 Master Lease. Under the terms of the Master Agreement, Samaritan was required to give written notice to its sub-tenants that their subleases had terminated by operation of law effective on April 12, 2007. Cardinal Hill states that it never received such written notice. The Debtors filed their Chapter 11 petitions on April 16, 2007 and operated the hospital and related facilities as debtors in possession until the sale.

On April 30, 2007 Samaritan Alliance, LLC and the related Debtors filed their Motion for Order...Authorizing the Rejection of Certain Executory Contracts and Leases (Doc. #86, "the Rejection Motion"). On May 3, 2007 they filed their Motion to Authorize the Emergency Sale of Substantially All of the Debtors' Assets to the University of Kentucky (Doc. #93, "the Sale Motion"). Cardinal Hill filed its Objection to Debtor's Motion to Reject Lease and Agreements and Request for

Continuance (Doc. #141, "the Objection") on May 17, 2007.  On June 4, 2007, the Debtors, UK, and Cardinal Hill entered into an Agreed Order (Doc. #209) regarding Cardinal Hill's Objection.

The Agreed Order set out that Cardinal Hill and UK had attempted to resolve the matters between them regarding the CHRU, but had been unable to do so.  They agreed that Cardinal Hill would withdraw its Objection to the Rejection Motion, and further agreed that they would continue negotiations until June 30, 2007 "regarding the financial details of Cardinal Hill's continuing day-to-day operations."  They preserved all rights and issues under Code sections 363(f) and 365(h).  After the Sale Order was entered, the court entered an Order Regarding Objections of...Cardinal Hill (Doc. #235)on June 6, 2007.  This order clarified that nothing in the Sale Order altered the terms of the Agreed Order.

On June 28, 2007, UK filed a Motion to Approve Methodology for Establishing Value (Doc. #314).  UK and Cardinal Hill entered into an Agreed Scheduling Order (Doc. #369) on August 6, 2007, and on August 22, 2007, Cardinal Hill filed its Motion for Order Determining Rights under 11 U.S.C. section 365 (Doc. #413, "the Section 365 Motion").  UK filed its Response to Cardinal Hill Motion for Order Determining Rights under 11 U.S.C. section 365 (Doc. #438, "the UK Response") on August 31, 2007.  The Debtors filed a Motion to Compel Payment of Rents (Doc. #430) on August 29, 2007.  Cardinal Hill filed its Response to Debtors' Motion to Compel Payment of Rents and Reply to UK Response (Doc. #441) on September 5, 2007.  UK filed its Reply to Cardinal Hill's Reply (#447) on September 7, 2007.  All of these matters were heard on September 6, 2007, and taken under consideration

for decision.

    2.   <u>Discussion</u>

The central issue to be determined, and the one which will dictate the resolution of the various matters before the court, is whether Cardinal Hill retains rights under Code section 365(h) in regard to the 2005 Master Lease. Section 365(h) provides in pertinent part:

> (h)(1)(A) If the trustee rejects an unexpired lease of real property under which the debtor is the lessor and---
> . . . .
>   (ii) if the term of such lease has commenced, the lessee may retain its rights under such lease (including such rights such as those relating to the amount and timing of payment of rent and other amounts payable by the lessee and any right of use, possession, quiet enjoyment, subletting, assignment, or hypothecation) that are in or appurtenant to the real property for the balance of the term of such lease and for any renewal or extension of such rights to the extent such rights are enforceable under applicable non-bankruptcy law.

11 U.S.C. § 365(h)(1)(A)(ii). UK maintains that section 365(h) is inapplicable because any rights that Cardinal Hill had were cut off prior to the filing of the bankruptcy case. Cardinal Hill contends that it retains its rights under the SNF Lease and that UK may not prevail on that argument.

Cardinal Hill characterizes the pre-filing arrangements between and among the Debtor, UK, and Ventas as "machinations." Whether or not they sink to the level of "machinations," the court must consider whether they deprived Cardinal Hill of rights in a manner which would not have been allowed in a non-bankruptcy context. Cardinal Hill states that "it would appear by the undisputed facts that a consensual surrender occurred on April 12, 2007," i.e., UK, Ventas, and the Debtors were in extensive negotiations for several months prior to

bankruptcy, and the lease termination occurred two (business) days before the bankruptcy filing.  Cardinal Hill also provides a copy of public filings in March 2007 with the Kentucky Cabinet for Health and Family Services wherein UK provided notice of its intent to terminate the Cardinal Hill SNF Lease and transfer the beds there back to UK as part of the overall transaction.

On this basis, Cardinal Hill contends that the lease termination at issue was voluntary, and that its voluntary nature provides an exception to the general rule that when a lease expires according to its terms or is terminated through enforcement of termination rights following default, any sub-tenancy is terminated as well.  In support of its position regarding the effect of voluntary termination, Cardinal Hill cites *McKenzie v. City of Lexington*, 34 Ky. 129, 1836 WL 2022, *2 (1836) ("The surrender of his lease, by a tenant, will not divest his subtenants of their rights; and he will be justly liable for their subsequent use and occupation.").

Pursuant to its terms, Ventas had the right to terminate the 2005 Master Lease upon any default. UK maintains that there were several events of default on Samaritan's part (which do not appear to have been specified by the parties), and that Ventas could have terminated the 2005 Master Lease well before the actual termination.  UK therefore takes the position that the 2005 Master Lease terminated by operation of law, Samaritan having failed to satisfy certain obligations under it, and that upon its termination, any rights Cardinal Hill had as a subtenant under the SNF Lease were extinguished.  However, the Master Agreement among the parties dated April 12, 2007 does not seem to read that way.

5

The question of whether the termination of the 2005 Master Lease was voluntary or by operation of law does not yield a simple answer. This is especially true in light of the dearth of facts before the court surrounding the pre-bankruptcy transactions.  The record does reflect, however, that negotiations between and among the Debtors, UK, and Ventas were in progress more than two months before the filing of the Chapter 11 case and that the plan included Samaritan's filing of a bankruptcy petition as part of the plan to transfer operation of the hospital to UK.  This is further buttressed by the payment of a retainer to bankruptcy counsel on April 6, 2007 as reflected in Doc. 3 in the affidavit of the proposed attorneys.  The April 12, 2007 Master Agreement provides in pertinent part:

> B.  On February 13, 2007, the Parties entered into a letter of intent ("LOI") pursuant to which the Ventas Leases were to terminate; UK and Ventas were to enter into a new one-year lease renewable for 12 years . . . for the properties covered by the Ventas Leases; . . . UK, subject to due diligence, was to enter into an asset purchase agreement with Associated and Samaritan to purchase all assets of Associated and Samaritan necessary by UK to the operation of the hospital and the medical office building; . . .

Master Agreement, April 12, 2007, pp. 1-2.  This language suggests to the court that Ventas did not simply impose a termination of the 2005 Master Lease upon Samaritan because it was in default, but that the termination was part of a more comprehensive plan, including the Debtors' bankruptcy filing, that was formulated and agreed to by Ventas, the Debtors and UK.  The parties appear to have taken great pains to assure that other potential purchasers of the Hospital would be at a significant disadvantage by having the lease assigned to UK prior to the filing, in addition to having UK's affiliate (KMSF) hold the position of major secured creditor.

The court is therefore of the opinion that Bankruptcy Code section 365(h) is applicable here.  UK argues, however, that even if Cardinal Hill is determined to have rights under section 365(h), such determination does not impair UK's position under the terms of Code section 363(f), i.e., that it purchased the Hospital free and clear of liens and encumbrances.  UK cites in support of this position *Precision Indus., Inc. v. Qualitech Steel SBQ*, 327 F.3d 537 (7th Cir. 2003), wherein the court held that the terms of section 365(h) do not supercede the terms of section 363(f), but that

> . . . the two statutory provisions can be construed in a way that does not disable section 363(f) vis a vis leasehold interests.  Where estate property under lease is to be sold, section 363 permits the sale to occur free and clear of a lessee's possessory interest–provided that the lessee (upon request) is granted adequate protection for its interest.  Where the property is not sold, and the debtor remains in possession thereof but chooses to reject the lease, section 365(h) comes into play and the lessee retains the right to possess the property.

*Id.* at 548.  The *Precision Industries* court seems to find section 365(h) only "comes into play" when property is not sold.

Cardinal Hill cites in response *In re Haskell L.P.*, 321 B.R. 1 (Bankr. D. Mass. 2005).  There the court denied the Chapter 11 debtor's motion to sell real property free and clear of liens and encumbrances because it could not demonstrate that its affected tenant could be compelled to accept a monetary satisfaction of its interest in the debtor-landlord's property pursuant to section 363(f)(5).  The court, after pointing out that the focus of section 363(f)(5) is whether the lessee's interest can be reduced to a monetary claim, stated:

> [W]here the Debtor is rejecting the lease with [the tenant], under its Liquidating Plan, [the tenant] has, at its option,

7

>    the right to remain on the premises in accordance with
>    § 365(h). . . . If the Court were to grant the Debtor's Sale
>    Motion, the provisions of § 365(h) would be eviscerated.  In
>    other words, the Debtor would be doing indirectly what it
>    could not do directly, namely, dispossessing [the tenant].

*Id.* at 9.

The issue of whether UK purchased the Hospital "free and clear" of Cardinal Hill's interest has been retained for consideration per the terms of the Agreed Order.  Cardinal Hill reiterates its argument that UK did not buy the Hospital free and clear of its rights, and that the court should follow *Haskell* and so rule.  The court finds the reasoning in *Haskell* instructive, and agrees with its conclusion that section 365(h) is applicable in the context of a section 363(f) sale. Cardinal Hill's possessory interest in the Hospital property and the rights appurtenant thereto, as embodied in the SNF Lease, are preserved by section 365(h). The court will therefore grant Cardinal Hill's request that it enter an order finding that Cardinal Hill has full section 365(h) rights to continue in possession of the leased premises and to operate the SNF Unit through the full term of the SNF Lease.

Cardinal Hill further contends that it should be entitled to offset the full present value of the rental accruing under the remaining term of the SNF Lease ($186,695.00 per annum through September 2015, including amounts held in escrow since these cases were filed).  Cardinal Hill seeks to have the court determine the dollar amount it may offset against obtaining replacement services which Samaritan is no longer obligated to provide under "the integrated contract," i.e., the CHRU Agreements.

UK's response to this argument is that section 365(h) only

applies to services "under the lease" and may not be expanded to include executory contracts such as the Purchased Services Agreement:

> If the lessee retains its rights under subparagraph (A)(ii), the lessee may offset against the rent reserved under such lease for the balance of the term after the date of the rejection of such lease and for the term of any renewal or extension of such lease, the value of any damage caused by the nonperformance after the date of such rejection, of any obligation of the debtor under such lease, but the lessee shall not have any other right against the estate or the debtor on account of any damage occurring after such date caused by such nonperformance.

11 U.S.C. § 365(h)(1)(B). UK contends that the Purchased Services Agreement is not a lease and that the protections afforded by section 365(h) do not apply to it. The court, however, agrees with Cardinal Hill that the CHRU Agreements form an integrated whole, and that section 365(h) applies not only to the SNF Lease but to the agreements appurtenant to it and to the rights contained therein. Cardinal Hill acknowledges that its remedies are limited to offsetting rent against its damages and that section 365(h)(1)(B) provides that it does not have additional rights to assert a rejection damages claim against the estate.

Finally, the court having determined that Cardinal Hill has rights under Bankruptcy Code section 365(h), the Debtors' Motion to Compel Payment of Rents and UK's Motion to Approve Methodology for Establishing Value will be overruled. The court reserves for determination and decision the issue of the amount Cardinal Hill may offset against its damages. An order in conformity with this opinion will be entered separately.

Copies to:

Laura Day DelCotto, Esq.

```
Elizabeth Lee Thompson, Esq.
W. Thomas Bunch, Esq.
```

10

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
*The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.*



**Signed By:**
*<u>William S. Howard</u>*
**Bankruptcy Judge
Dated: Wednesday, November 21, 2007
(wsh)**