UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE:

SAMARITAN ALLIANCE, LLC
d/b/a Samaritan Hospital, et al.

DEBTORS                                        CASE NO. 07-50735
                                               Chapter 11
                                               Jointly Administered

**MEMORANDUM OPINION**

This matter is before the court on the Amended Application for Allowance of an Administrative Expense Claim ("the Application") (Doc. #574) filed by creditor Kentucky Utilities Company ("KU"), and the Objection (Doc. #583) thereto by the Liquidating Debtor ("the Debtor"). KU filed its Response to Liquidating Debtor's Objection to Application for Allowance of an Administrative Claim ("the Response")(Doc. #606), and the matter was heard on February 14, 2008. Pursuant to an Order of Submission (Doc. #637) entered on March 3, 2008, the matter was taken under consideration for decision.

1. Factual and procedural background

The parties have entered into a Stipulation Concerning Issues in Controversy for Hearing of Kentucky Utilities' Motion to Allow Administrative Claim (Doc. #604). It provides as follows:

1. The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on or about April 16, 2007 (the "Petition Date").

2. KU timely filed an unsecured claim against the Debtor and its estate in the amount of $63,690.58, less any applicable credits, of which amount it asserts that $35,067.59 is allowable as an administrative claim with priority pursuant to 11 U.S.C. § 507(a)(2).

      3.     On or about December 19, 2007, KU timely filed its Application for Allowance of An Administrative Expense Claim (D.I. 569) as amended (D.I. 574) ("KU's Motion").  KU's Motion seeks allowance of an administrative claim in the amount of $35,067.59, representing the value of electricity provided to the Debtor during the 20 days immediately preceding the Petition Date, pursuant to 11 U.S.C. § 503(b)(9).  The Debtor has filed its Objection to this Application.

      4.     KU and the Debtor hereby stipulate that the value of the electricity provided by KU to the Debtor during the 20 days immediately preceding the Petition Date is $35,067.59.

      5.     The Debtor and KU hereby stipulate that the electricity provided by KU to the Debtor during the 20 days immediately preceding the Petition Date was sold to the Debtor in the ordinary course of the Debtor's business.

      6.     KU and the Debtor disagree on whether the provision of such electricity by KU to the Debtor constitutes 'goods received' so as to qualify as an administrative expense priority claim under 11 U.S.C. § 503(b)(9)[.]

After the Petition Date the Debtors continued to operate Samaritan Hospital as debtors-in-possession until June 6, 2007, when the University of Kentucky took control of hospital operations pursuant to the Sale Order (Doc. #234).  The Debtors' Amended Plan of Orderly Liquidation and Distribution (Doc. #481) was confirmed on November 9, 2007 with the entry of the Order of Confirmation (Doc. #512).

    2.    <u>Discussion</u>

     KU's Application seeks $35,067.59 as an administrative expense claim for goods, in the form of electricity, it provided to the Debtor.  It makes this claim pursuant to Bankruptcy Code section 503(b)(9), which provides that a creditor will be allowed an administrative expense claim for "the value of any goods received by the debtor within 20 days before the date of commencement of a case

under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." 11 U.S.C. § 503(b)(9). As set out above, the Debtor disputes the characterization of electricity as "goods."

The Debtor argues that KU provides "services," not "goods," and that section 503(b)(9) only applies to goods, pointing out that the Code does not define goods, but uses the terms "goods" and "services" in different contexts. The Debtor argues that electricity is not considered "goods" under the generally accepted use of the term, and further contends that section 503(b)(9) was not intended to incorporate services provided, making reference to that section's interplay with section 546(c).

In support of its position concerning whether electricity may be defined as "goods," the Debtor cites *G & K Dairy v. Princeton Elec. Plant Bd.*, 781 F. Supp. 485 (E.D. Ky. 1991), a products liability case in which the court dealt with so-called "stray voltage" which had harmed a farmer's dairy herd, and determined that stray voltage is not a product. *Id.* at 489. In contrast, KU cites *Bryant v. Tri-County Elec. Membership Corp.*, 844 F. Supp. 347 (W.D. Ky. 1994), for its holding that "ordinary electricity" is a product in the strict products liability context. *Id.* at 352.

The Debtor also cites *Buckeye Union Fire Ins. Co. v. Detroit Edison Co.*, 196 N.W.2d 316, Mich.App., (1972) in which the court stated that electricity was not a good, but did apply an implied warranty to the sale of services such as the sale of electricity. In *Encogen Four Partners, L.P. v. Niagara Mohawk Power Corp.*, 914 F. Supp. 57 (S.D. N.Y. 1996), the court held that the U.C.C. did not

3

govern contracts for the sale of electricity because "[u]nder New York law, . . ., the sale of electricity does not constitute a sale of goods, but a service." *Id.* at 61.

KU contends that many courts have concluded that electricity sold by a utility is a good or product. It cites *Kentucky Elec. Co. v. Buechel*, 143 S.W. 58, Ky. (1912), in which the court held that electricity was a manufactured product, and *City of Princeton v. Princeton Elec. Light & Power Co.*, 179 S.W. 1074, Ky. (1915), in which the court discussed the production and sale of electricity as a commercial product. KU reasons that because electricity is a manufactured product, it must be a good.

KU also cites cases from other jurisdictions, some holding that electricity is a product for purposes of strict product liability. *See, e.g., Houston Lighting & Power Co. v. Reynolds*, 765 S.W.2d 784, Tex. (1988); *Smith v. Home Light & Power Co.*, 734 P.2d 1051, Colo. (1987); and *Schriner v. Public Serv. Elec. and Gas Co.*, 501 A.2d 1128, Sup. Ct. Penn. (1985). Other cases KU cites hold that electricity is a good for purposes of the UCC. *See, e.g., Enron Power Mktg., Inc. v. Nev. Power Co.*, 2004 WL 2290486, at *2 (S.D. N.Y. 2004); *Grant v. Sw. Elec. Power Co.*, 20 S.W.3d 764, Tex. Ct. App. (2000); and *Cincinnati Gas & Elec. Co. v. Goebel*, 502 N.E.2d 713, Ohio Mun. Ct. (1986).

The Debtor contends that electricity cannot be considered goods under the UCC because it is not specifically identifiable before it passes through a meter. As set out by the Debtor in its Brief in Support of its Objection

> [e]lectricity . . . travels in an unconsumable state via high-voltage lines before its conversion by the utility company into a consumable 110 voltage. The 110 voltage is

>   then transmitted further and ultimately delivered to a meter
>   for on-demand usage by consumers.  The electricity thus sold
>   to and used by consumers cannot be identified prior to its
>   delivery, i.e., passing through a meter, or after delivery.
>   Thus, electricity is not 'fairly identifiable . . . <u>before</u>
>   the contract is performed' and therefore cannot be
>   considered 'goods' under the UCC.  <u>Official Comment</u>, U.C.C.
>   Sales § 2-105 (emphasis added).

KU points out that the Official Comment quoted from above more completely provides that "[t]he definition of goods is based upon the concept of movability . . . It is not intended to deal with things which are not fairly identifiable **as movables** before the contract is performed." UCC § 2-105, Official Comment § 1 (emphasis added). KU argues that electricity is clearly movable and fairly identifiable to a party to a contract as a movable thing being sold.

Finally, the Debtor contends that section 503(b)(9) cannot be extended to incorporate services provided. It points out that Congress chose not to include any reference to the value of **services** performed by creditors who make 20-day claims pursuant to that section. The Debtor raises the issue of the application of Code section 546(c), which authorizes a seller of goods to obtain reclamation of those goods by following the procedure set out in the statute, and contends that "goods" means merchandise or inventory that can be reclaimed. Section 546(c)(2) provides that sellers of goods who fail to provide the notice required in its paragraph (1) "still may assert the rights contained in section 503(b)(9)." 11 U.S.C. §546(c)(2).

The Debtor contends it is clear that section 503(b)(9) was created to work in tandem with section 546(c), as the option of filing a 20-day claim provides a monetary alternative, i.e., "the value of

any goods," to a creditor's reclamation rights.  11 U.S.C. §503(b)(9).  The Debtor points out that a creditor's reclamation rights prevent a debtor from stockpiling assets as it descends into bankruptcy.  Since electricity cannot be stockpiled (this argument neglects storage in a battery or capacitor), it does not have the same potential to benefit the bankruptcy estate that inventory or merchandise would.  The Debtor therefore maintains that KU's Application does not fit into the section 503(b)(9)-section 546(c) framework and that it should not be permitted in any manner other than a general unsecured claim.

At oral argument on this matter, debtor's counsel pointed out that the provisions of section 503 apply also to other chapter proceedings under the Bankruptcy Code.  Specifically, if KU is correct, utilities such as KU would have administrative claims for the appropriate portion of their claims in all cases under Chapters 7 and 13 involving business debtors.  It seems unlikely that Congress intended such a fundamental change to administrative claims effecting so many bankruptcy cases in the absence of clearer language.

Having considered the arguments of the parties, the court concludes that while courts are divided on the general question of whether or not electricity is "goods," the court agrees with the Debtor that section 503(b)(9) is not applicable here and that the electricity provided is more properly characterized as a "service."  The court therefore finds that KU's Amended Application for Allowance of an Administrative Expense Claim should be overruled.  An order in conformity with this opinion will be entered separately.

Copies to:

```
Lea Pauley Goff, Esq.
W. Thomas Bunch, Esq.
U.S. Trustee
```

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
***The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.***



**Signed By:**
***William S. Howard***
**Bankruptcy Judge**
**Dated: Friday, June 20, 2008**
**(wsh)**